No. 36,887

EDNA KINSER, *Appellant*, v. J. G. BENNETT, as Special Administrator of the Estate of Rees Carr, deceased, et al., *Appellees.*

(186 P. 2d 284)

KARL MILLER, judge. Opinion filed November 8, 1947.

*George Barrett,* of Pratt, argued the cause, and *V. M. McElroy,* of Greensburg, was with him on the briefs for the appellant.

*Steve W. Church,* of Greensburg, argued the cause, and was on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: This appeal arises from a judgment of the district court of Kiowa county, in an action properly transferred from the probate court of such county, denying the allowance of a claim against the estate of a deceased person.

Rees Carr, an aged bachelor, and his maiden sister, Martha Carr, who was much older, resided together in the city of Haviland, Kan., in April, 1942. Both were, and until the date of their death remained, physically incapacitated and unable to properly care for themselves. Miss Carr died on January 17, 1946. Mr. Carr died on April 25, 1946. Some months prior to their deaths, although Miss Carr owned no property at the time or thereafter, the brother and sister joined in the execution of a last will and testament. That instrument, on appellant's own petition, was admitted to probate on the 29th day of May, 1946, as the last will of Rees Carr.

On August 31, 1946, the appellant, who was a niece of the testator, filed a claim against his estate. We are interested only in matters asserted by her as grounds for its allowance. With respect to them such demand reads:

"For personal services rendered as housekeeper and practical nurse, to Rees Carr and Martha E. Carr, deceased, at the special instance and request of the decedent Rees Carr, from the 3rd day of August, 1944, to the date of decedent's death on April 25, 1946, for which services the decedent Rees Carr agreed to pay a reasonable compensation; that a reasonable charge for the services rendered is the sum of $30 per week, or a total of $2,700.

.  .  .  .  .  .  .  .  .  .  .  .

"That on or about the 3d day of April, 1942, the said Rees Carr asked the petitioner to come into the home of the said Rees Carr and Martha E. Carr and keep house for them, and give them such attention and care as they should require so long as they should live, and agreed with the petitioner that she should be reasonably compensated for the services rendered.

"That the petitioner agreed to perform the services requested, and at that time went to the home of the said Rees Carr and Martha E. Carr; that she lived in their home and performed the services agreed upon; . . . "

Thereafter, the appellee, as special administrator of the estate of Rees Carr, and the appellees, The Friends Africa Gospel Mission of Kansas Yearly Meeting of the Society of Friends and The Friends Bible College, of Haviland, Kan., who are beneficiaries under the will of such testator, filed identical answers in which they stated they had no personal knowledge of the appellant's claim which permitted them to either deny or admit its validity and requested the claimant be put on strict proof thereof.

With issues joined as heretofore stated, the cause was submitted to the trial court upon the evidence adduced by the parties. In due time that tribunal rendered its judgment denying the claim, which judgment according to the journal entry, was based upon the following findings:

"1. That the claimant, Edna Kinser, did not prove an express contract between herself and Rees Carr.

"2. That the claimant, Edna Kinser, has been compensated for her services so rendered by reason of the bequest contained in the will of Rees Carr, deceased, in the sum of one thousand dollars($1,000.00) to the said claimant, Edna Kinser, and by reason of the conveyance of real property made by the said Rees Carr to the said Edna Kinser in his lifetime.

"3. That by reason thereof claim should be and the same is hereby denied."

Appellant appeals from the judgment charging that the court erred in its findings 1 and 2 and in overruling her motion for a new trial.

The grounds relied upon by appellant as error require an examination of the facts disclosed by the evidence on which the trial court's judgment was based. Such facts are not in controversy and for that reason will be stated in narrative form rather than in detail.

At the outset it can be stated the appellees concede that on all dates in question both Rees and Martha Carr were in a pitiable condition, that appellant cared for them in a laudable manner and that the claim made by her for services was reasonable. Therefore, our summarization of the facts will be limited strictly to the evidence pertaining to the contract upon which the appellant predicates her claim and such other matters as have to do with whether it was a proper and legal claim against her uncle's estate. With respect to such matters the record discloses:

In April, 1942, Martha Culver, a niece, who had been caring for the Carrs, decided that she could no longer perform that obligation. She had a conversation with Rees Carr wherein she suggested the possibility of getting her sister, Mrs. Kinser, the appellant, to come to their home and look after them. As a result of that conversation Mr. Carr instructed Mrs. Culver to write appellant and inquire if she would come and care for him, and aunt Martha, and advise her that if she would do so he would see that she was well paid and cared for. Mrs. Culver wrote the letter and in response to such communication the appellant came to the Carr home in April, 1942, and remained there until Mr. Carr died in 1946, during all of which time, as heretofore noted, she looked after and cared for her aunt and uncle. For a year after she came to the home, or perhaps until shortly prior to August, 1944, she did outside work in the community for compensation. Nevertheless, she cared for and looked after the Carrs. From August, 1944, to

the date of Mr. Carr's death, her entire time was devoted to that obligation.

Prior to coming to the Carr home, Mrs. Kinser had been living with her children and had no home of her own. After taking up her abode with the Carrs she was given her board and room without charge but bought her own clothing. She was never paid any wages for her services. In fact, strange as it may seem, there is no evidence that she ever talked with Mr. Carr or his sister, or had any conversation with anyone about what wages she was to be paid or what compensation she was to receive for her services. Indeed, the only evidence on that point is to be found in what has been heretofore stated was written to her by her sister Mrs. Culver, at Mr. Carr's instruction.

Rees Carr and Martha Carr executed the joint last will and testament to which we have heretofore referred on May 14, 1945. Provisions thereof having application to this appeal read:

"Second—We give and bequeath unto our niece, Edna Kinsey (sic), for her care and kindness to us, the sum of one thousand dollars cash."

On August 8, 1945, Rees Carr executed and delivered a general warranty deed whereby in consideration of "one dollar and love and affection" he conveyed to appellant certain real property in Haviland, Kan., subject to a life estate in himself, being the home in which all parties were living. Thereafter, on March 15, 1946, just a few weeks prior to his death, he conveyed another tract of real estate in Haviland to appellant. That conveyance was also by general warranty deed in which the consideration recited was "one dollar and other valuable considerations."

In support of the judgment much time is devoted by appellees in their brief to the question whether there was an express contract between the parties. We do not deem it necessary to here pass upon that interesting subject. Assuming there was such a contract there is sound reason why the judgment of the trial court must be affirmed.

Preliminary to the pronouncement of our conclusions on that point it should be said that if there was a contract appellant's contention it was void under the statute of frauds (G. S. 1935, 33-106), and therefore not available as the basis for claimant's demand, cannot be sustained.

This court, in *Richard v. Kilborn,* 150 Kan. 579, 95 P. 2d 545, under circumstances where—as here—the evidence disclosed the

contract had been fully performed, rejected such a contention when it held:

"The provision of the statute of frauds relative to contracts, not in writing, which are 'not to be performed within the space of one year' is not to be applied to defeat the claim of one who has fully performed his part of an oral contract for personal services and nothing remains to be done under the contract but payment by the party who has received the benefits of the services." (Syl. ¶ 2.)

For other authorities to the same effect, see *Andregg v. Sparrow*, 152 Kan. 744, 748, 107 P. 2d 739, and *McEnulty v. McEnulty*, 146 Kan. 198, 69 P. 2d 1105.

Heretofore we have noted that appellant's second specification of error is based upon the premise the trial court erred in holding she had been compensated for her services by reason of the bequest contained in the will of Rees Carr and in the two conveyances made by him to her. We have carefully examined the record with respect to that contention and it would serve no useful purpose to repeat what is to be found there. Summarizing, it reveals that appellant received and accepted the two deeds, the consideration of one being "one dollar and love and affection" and the other being "one dollar and other valuable considerations." It further discloses that she was a beneficiary under his will in a bequest expressly stated to be for *care* and kindness (emphasis supplied). There is nothing in the record to show she ever tendered back or offered to return the considerations received by her and she specifically stated she was claiming the legacy under the will. Neither is there any showing in the record that the property already received by her under the deeds and the bequest to which she was entitled under the terms of the will was not a reasonable compensation for her services. In that situation, based upon a contract that merely provided she was to be "well paid and cared for" we have little difficulty in concluding the trial court's holding that appellant had been compensated for her services was sustained by substantial competent evidence. It follows there was no error in denying the claim.

We have no quarrel with the authorities cited by appellant which hold that a legacy shall not be deemed a satisfaction for a preexisting debt unless it appears to be the intention of the testator. The trouble is they are not applicable here. The appellant's bequest expressly provided that it was for "care." Besides, there were other advancements made by the testator during his lifetime which the

trial court properly took into account in determining whether appellant's claim had been satisfied.

Without passing upon the proposition, because it is neither briefed nor argued, we feel impelled to suggest the record may present another good reason why the trial court's judgment should be upheld. It would seem that one who asserts a demand against the estate of a deceased person, based upon a contract and conditions and circumstances such as are here involved, must renounce his legacy and tender back other considerations paid or advanced by the testator in his lifetime in order to avoid application of the principles of the doctrine of equitable estoppel.

Appellant's final specifications of error has to do with the overruling of the motion for a new trial. His contentions with respect thereto raise no issues other than those heretofore mentioned.

The judgment is affirmed.