(May 31, 1901.)

## FRANCIS v. GREEN.

[65 Pac. 362.]

WATER RIGHTS—ENFORCEMENT OF CONTRACT—EQUITY—PART PERFORMANCE—POSSESSION AND RIGHTS OF SETTLERS—PUBLIC DOMAIN.—A verbal contract to convey the right to use water for irrigation and domestic purposes, where there has been a part performance of the contract of sale, and the possession and use of such water has been changed, will be enforced in a suit in equity. Settlers upon Indian reservations are subject to the same law governing the possession and right to the possession of property

as settlers upon the public domain, where it appears that they occupy lands as homes within such reservation by sufferance only. (Syllabus by the court.)

APPEAL from District Court, Bannock County.

J. W. Eden and D. W. Standrod, for Appellants.

In a suit to quiet title the plaintiff must allege and prove title in himself, and if he fails he cannot recover. (See *Heney v. Pesoli,* 109 Cal. 53, 41 Pac. 819; *Winter v. McMillan,* 87 Cal. 256, 22 Am. St. Rep. 243, 25 Pac. 407; *San Francisco v. Ellis,* 54 Cal. 72.) W. M. Francis, the vendor of the plaintiffs, not only could not acquire any right to the land or water on the reservation but was forbidden by law from going upon the land and when he did go upon the land and settled thereon he committed a crime against the laws of the United States. (See U. S. Rev. Stats., sec. 2118; *Langford v. Monteith,* 1 Idaho, 612.) The plaintiffs and their predecessors in interest are and were trespassers upon the Indian reservation, without any right whatever to settle or make improvements upon the lands reserved for the sole use of said tribes. (See *Langford v. Monteith,* 1 Idaho, 612; 15 U. S. Stats. at Large, 674.)

Terrell & Guheen, for Respondents.

The appellants having been voluntary parties to that suit, and having accepted the fruits of a decree, can they now be heard to say it is void, when they think it operates against them? Are they not estopped? We think the following authorities answer the questions favorable to the respondent: *Denver City Irr. Co. v. Middaugh,* 12 Colo. 434, 21 Pac. 565, 13 Am. St. Rep. 234; *Board of Commissioners v. Welch,* 40 Kan. 767, 20 Pac. 483; *Sanford v. Oberlin College,* 50 Kan. 342, 31 Pac. 1089; *Neil v. Tolman,* 12 Or. 289, 7 Pac. 103; *Lord v. Thomas* (Cal.), 36 Pac. 372; *Bryan v. Kales* (Ariz.), 20 Pac. 311; *Clemens v. Clemens,* 37 N. Y. 74; *Bloomer v. Struges,* 58 N. Y. 176; *Aspden v. Nixon* (exhaustive notes), 4 How. 466, 11 L. ed., 1059. In the trial court it was contended that the federal courts had exclusive jurisdiction, but we deny the proposition. To give a court of the United States jurisdiction of a

cause, it must appear that the right to relief sought must de-pend directly upon the construction of some provision of the constitution or laws of the United States. (*Montana R. O. P. Co. v. Boston & M. C. C. Co.,* 93 Fed. 274; *Tennessee v. Union & P. Bank,* 152 U. S. 454, 14 Sup. Ct. 654.)   In the case of *Prallus v. P. G. & S. M. C.,* 35 Cal. 34, the court says: "The plaintiffs, as appears by their complaint, claim only a possessory title in or upon the public lands of the United States, and the first question presented is, whether such a claim or title is suffi-cient to authorize an action by a party in possession under the same, to determine the adverse title or claim of a party out of possession.   This has been frequently decided by this court in the affirmative and we think correctly." (*Merced Mm. Co. v. Fremont,* 7 Cal. 319, 68 Am. Dec. 262; *Smith v. Brannon,* 13 Cal. 107; *Boggs v. Merced Min. Co.,* 14 Cal. 279; *Curtis v. Sutter,* 15 Cal. 259; *Head v. Fordyce,* 17 Cal. 149.)   The dis-trict court rendered judgment in favor of the plaintiffs, because the deed made by W. M. Francis to defendants was not signed by his wife Sarah M. Francis one of the plaintiffs in this case. This was upon the theory that the water was community prop-erty and real estate, and that it could be conveyed only as pro-vided by section 2921 of the Revised Statutes of Idaho.   (Idaho Rev. Stats., sec. 2825; *Ada County Farmers' Irr. Co. v. Farmers' Canal Co.,* 5 Idaho, 793, 51 Pac. 990; *Clifford v. Larrien* (Ariz.), 11 Pac. 397; *Reed v. Spicer,* 27 Cal. 58; *McGinnis v. Standfield,* 6 Idaho, 372, 55 Pac. 1020.)   That the deed made by the husband without the signature or acknowledgment of the wife for property occupied and used as a place of residence is void.   (Rev. Stats., secs. 2505, 2921, 2922, 2956; *Stowell v. Tucker,* ante, p. 312, 62 Pac. 1033; *Wilson v. Wilson,* 6 Idaho, 597, 57 Pac. 708-710; *Northwestern etc. Bank v. Rauch,* ante, p. 152, 61 Pac. 516; *Law v. Spence,* 5 Idaho, 244, 48 Pac. 282.)

STOCKSLAGER, J.—In this case we are called upon to re-view the proceedings of the trial court on appeal from the judg-ment thereof.   It appears that William M. Francis and Sarah F. Francis are husband and wife.   The complaint alleges that

the real estate which is the subject of this action is the separate property of the plaintiff Sarah M. Francis, and for that reason William M. Francis is not made a party to the action. The complaint alleges: That about the year 1879 said plaintiff and her said husband located upon and improved a certain tract of land as follows: "About one hundred and sixty acres lying along Marsh creek at the intersection of Little Cottonwood and said Marsh creek," etc. That said land is disputed Indian country, but by permission of the Secretary of the Interior plaintiffs and their predecessors in interest have been permitted to remain upon, cultivate, occupy and improve the same, and that plaintiffs are now in the possession and occupation of said lands and improvements, and have been since the year 1879 continuously, and are entitled to such possession, occupation and improvements. That the defendants, their predecessors, etc., have been and now are in possession, occupation and use of about one hundred and sixty acres lying to the north of and adjoining the lands of plaintiffs upon such disputed Indian country, having the same, or practically the same, rights that the plaintiffs have to the lands above described. That the land possessed by plaintiffs is arid, and will not produce agricultural crops successfully without irrigation. That plaintiffs and their predecessors in interest in the year 1879 appropriated of the waters of Little Cottonwood creek certain water therein flowing for agricultural and domestic purposes, and ever since have claimed and used, and now claim and use, such water for such purposes. That on the twenty-eighth day of December, 1898, in the action of William Francis, plaintiff (being the William M. Francis herein referred to), against Andrew Goodenough and J. and B. Green, defendants, in the above-entitled court, judgment and decree were duly made and entered in favor of said plaintiff and against said defendants adjudging and decreeing to plaintiff the use of one hundred and twenty-five inches of the waters of said Little Cottonwood creek from April 1st to June 1st of each year, and one hundred inches thereafter up to August 1st, and seventy-five inches thereafter during the remainder of each irrigating season, for the proper irrigation of the land of plaintiffs above described; such rights to be of equal dignity with a similar right

awarded to Andrew Goodenough; such rights to be superior to all other rights of any parties claiming water from said stream; and that the rights decreed to J. and B. Green should in no wise interfere with the rights of the plaintiffs in said action. That since the year 1879 plaintiff and her husband, William M. Francis, resided upon and used above-described land as a home, diverted water from said creek to be used upon said land, and continued to so use and occupy said land as a home until some time during the year 1899, when said William M. Francis deserted and abandoned plaintiff Sarah M. Francis, and has since resided separate and apart from her; but that she, with her children, has continued to reside upon said land as a home, and continued to use the water for agricultural and domestic purposes. That after the separation of said William M. Francis and Sarah M. Francis, in settlement of their property rights, said William M. Francis, by deed, conveyed to Sarah M. Francis all his interest in and to said land and the water theretofore decreed to him. That about the same day said William M. Francis and his wife, Sarah M. Francis, conveyed by deed to William L. Francis an undivided one-half interest in all of said land and the water belonging thereto. That by reason of such conveyance said plaintiffs are the joint owners of such land and the water decreed thereto. That defendants claim some estate or interest in said water so decreed to William M. Francis adverse to plaintiff, but that such claim is without right, etc. To this complaint defendants answer, denying that the property in controversy is, or ever was, the separate property of Sarah M. Francis. Deny that the tract of land claimed by plaintiffs contains one hundred and sixty acres, or to exceed one hundred and twenty acres, and allege that not to exceed eighty acres have ever been improved or cultivated. Deny that said land is situated on disputed Indian country, but allege that said land lies within the Fort Hall Indian reservation. Deny that plaintiffs occupy said land by permission of the Secretary of the Interior, or any other legal authority, and allege that plaintiffs are trespassers upon said lands and Indian reservation. Admit the decree as set forth in plaintiffs' complaint, but allege the court was without jurisdiction, and that the decree was void. Deny that the plaintiffs, or either

of them, have used or claimed the amount of water decreed to said William M. Francis since the spring of 1898 until June, 1900, but allege that one-half of said water has been used by these defendants since the spring of 1898 until the appointment of a water master by the court on June 19, 1900, and that one-half of said water was sold and abandoned to these defendants by said William and Sarah M. Francis. Deny that William M. Francis ever deserted or abandoned his wife, Sarah M. Francis. Deny that they have ever separated as husband and wife. Admit the execution of the deed referred to, but deny that it was made as a settlement of property rights, and allege that said deed was made wholly for the purpose of defrauding defendants. Admit the execution of the deeds to William L. Francis and Sarah M. Francis, but allege that said deeds were made without consideration, and for the purpose of defrauding defendants; that at the time said conveyances were made to said William L. Francis and Sarah M. Francis they well knew that defendants had been continuously in peaceful possession and use of one-half the water right decreed to William M. Francis since the spring of 1898, and knew of the claim of defendants in and to said water by reason of their purchase and use of said water right from the said William M. Francis and Sarah M. Francis. Deny that plaintiffs are the joint owners of the water in controversy. Admit that they claim an interest in the waters decreed William M. Francis. By way of cross-complaint, defendants allege: That in the year 1896 they settled upon the lands referred to in plaintiff's complaint, comprising two hundred and fifty acres, and have resided there continuously ever since, cultivating said land. That said lands lie within the Fort Hall reservation. That the water for the irrigation of said land is taken from Cottonwood creek, etc. That at the time they settled upon their lands William M. Francis and Andrew Goodenough were using water from said stream for the irrigation of their lands. That in 1897 defendants conveyed water from said stream to their lands for the purpose of irrigation. That in the spring of 1898 William M. Francis commenced a suit in the district court to determine the rights of said Francis and one Goodenough to the waters of said stream. That said William M. Francis and

Sarah M. Francis, in consideration of defendants employing an attorney, and paying him for his services, for the purpose of prosecuting such suit, and paying the costs thereof, they would give to defendants one-half of whatever rights might be decreed to them, and make to defendants proper conveyances therefor. That said Sarah M. Francis was present at these negotiations, participated in them, and urged defendants to accept the proposition. That defendants did accept such proposition, and went with William M. Francis to Pocatello, where an attorney was employed, the defendants agreeing to pay such attorney his fee and costs, which they afterward did, amounting to $114.80. That suit was commenced, and said Goodenough was restrained from interfering with the rights of plaintiff Francis. That immediately upon the service of the injunction (about June 29,. 1898) William and Sarah Francis, in accordance with their said agreement, gave possession to defendants of one-half of the water claimed in said stream, and abandoned the right to use the same to these defendants. That defendants used the said water continuously during the irrigating seasons of 1898 and 1899 and part of the irrigating season of 1900, until the appointment of a water master for said stream, appointed by the court, made on the 18th of June, 1900. That the object of the suit of Francis against Goodenough was not only to settle their respective water rights, but was also for the purpose of procuring a judgment permitting said Francis to change the point of his diversion. The decree gives him this right it is alleged, and since said decree he has continued to take the water used by, him through the ditch of these defendants. That, in pursuance of the agreement entered into by these defendants and William M. Francis and wife, the said William M. Francis, on the twenty-fourth day of March, 1899, made and delivered to these defendants his deed, duly executed, conveying to said defendants one-half of said water right decreed to him aforesaid. That Sarah M. Francis and William L. Francis, at the time they took their deeds from William M. Francis to the water rights, well knew of the conveyance of William M. Francis to these defendants. That the deeds to William L. and Sarah M. Francis from William M. Francis were without consideration, and for the purpose

of defrauding these defendants, and that plaintiffs well knew
such fact.

We have set out the complaint, answer and cross-complaint in
this action in almost their entirety, for the reason that judgment
was rendered by the trial court in favor of the plaintiffs on a
motion for judgment on the pleadings. From the pleadings it
will be observed that all the parties to this action reside
upon what is known as the "Fort Hall Indian Reservation";
that the land upon which they reside, as well as the stream from
which they procure their water for irrigation and domestic use,
are also upon this reservation, and are not a part of the public
domain, subject to entry and settlement, as provided by our
public land laws. From the record it appears that the defend-
ants entered into a contract with William M. and Sarah M.
Francis by which they agreed to pay the attorney's fee and
costs in a certain case to be commenced in the district court
between said William M. and Sarah M. Francis as plaintiffs and
one Goodenough as defendant which action was for the purpose
of settling the rights between said William M. and Sarah M.
Francis to the use of the waters for irrigation and domestic
purposes, of Little Cottonwood creek; that said action was com-
menced and tried in the district court of Bannock county, and
the waters of said stream decreed to said parties; that said de-
fendants thereafter paid said attorney's fee and costs, amount-
ing in all to the sum of $114.80; and that thereafter said Will-
iam M. Francis did convey a one-half interest in the water de-
creed to him to these defendants, and that they took possession
thereof, and used said water continuously for more than two
years. We think this case clearly falls within the rule laid
down in section 6008, which is as follows: "The preceding sec-
tion 6007 must not be construed to affect the power of a testator
in the disposition of his real property by a last will and testa-
ment. Nor to prevent any trust from arising or being extin-
guished by implication or operation of law. Nor to abridge the
power of any court to compel the specific performance of an
agreement in case of part performance thereof." For a con-
struction of this section, see *Stowell v. Tucker*, ante, p. 312, 62
Pac. 1034. In this case the court says: "The predecessor in in-

terest of the appellants received the full benefit that could accrue to it from the contract, even if said contract had been in writing, acknowledged and recorded; and appellants now seek to evade the obligations of said contract by invoking an equitable remedy. The appellants ask equity but refuse to do equity. The facts established by the record show that in a proper action the respondents would have been entitled to enforce specific performance of said oral contract under the provisions of section 6008 of the Revised Statutes. The appellants do not come with clean hands asking equity, but refusing to do equity." Appellants contend that, the property in controversy in this action being upon an Indian reservation, all the parties are trespassers, and the courts have no jurisdiction to determine their respective rights. While it does not appear that any of the parties have acquired permission from the Secretary of the Interior, or from any other source, to reside upon or occupy these lands, it does appear they are all there, and using the lands as homes, and have so used and occupied said lands since about the year 1879, and that their rights to occupy such land has never been questioned by the government authorities or the Indians themselves; hence we do not think the contention can be sustained, and the parties are subject to the same rules as though they lived upon the public domain. In view of the conclusions we have reached from the record, the judgment of the district court is reversed, and the cause remanded for further proceedings in harmony with this opinion.

Quarles, C. J., and Sullivan, J., concur.

PETITION FOR REHEARING.

(June 20, 1901.)

SULLIVAN, J.—A petition for a rehearing has been filed in this case and upon an examination of its contents, we are of the opinion that it shows no good reason for granting same, and a rehearing ought to be denied and it is so ordered.

Quarles, C. J., and Stockslager, J., concur.