666 P.2d 188

In the Matter of the General Determination of the Right to the Use of Surface Waters and Tributaries from Whatever Source of the Lemhi River Drainage Basin

Vergil O. and Irene OLSON, Appellants,

v.

IDAHO DEPARTMENT OF WATER RESOURCES; Herbert and Katherine Aldous; William B. and Rose Starr Boulton; William T. and Wilma A. Bramlette; E. Dale and Mildred H. Jolley; Frank J. and Betty Kohl; A.M. and Verne Santos; Ralph and Alda C. Yates; Arthur C. Tonsmeire III; Joseph and Frances Tonsmeire, Respondents.

No. 14578.

Supreme Court of Idaho.

July 7, 1983.

Matthew J. Mullaney, Jr., Boise, Idaho, for appellants.

Kent W. Foster, of Holden, Kidwell, Hahn & Crapo, Idaho Falls, Idaho, for respondents.

BAKES, Justice.

Appellants Olson appeal from a Rule 54(b) partial judgment, issued by the district court, adopting a special master's finding that all of the parties were bound by a stipulation filed in a water right controversy, allegedly orally agreed to, but ultimately not signed by the Olsons.[1]

This case arises out of a controversy over water rights in the Lemhi River basin. All of the parties involved in the present case are landowners in the Geertson Creek drainage, part of the Lemhi River adjudication.

On April 30, 1970, the Department of Water Resources petitioned the Seventh District Court for an order commencing an adjudication of water rights in the Lemhi River basin. I.C. § 42–1406. Such an order was issued on August 13, 1970, commencing the water right determination. On July 17, 1974, the department filed its proposed findings of water rights in the area. I.C. § 42–1410. Several landowners on the Geertson Creek drainage, including the Olsons, filed objections to these proposed findings. I.C. § 42–1410. By court order dated September 5, 1979, the objections were referred to a special master and set for pretrial conference and hearing.

On September 25 and 26, 1979, all claimants to the Geertson Creek drainage, with their attorneys, met to conduct a pretrial conference. During these meetings, the parties apparently worked out an oral compromise agreement settling the contested water rights. The special master was not present during the negotiations, but the parties' attorneys did appear in open court on September 26, and then indicated to the master on the record the following:

"BEEMAN: [Attorney for Department of Water Resources] Your Honor, yesterday and today the various parties and counsel involved in the objections ...

met to discuss those objections. As a result of the pre-trial conferences, the objections ... have been withdrawn on the basis of an agreement which will be drafted by Mr. Foster and that document will be submitted to the Court, indicating that it is the basis for the withdrawal of those objections.... [A]ll were withdrawn based on the agreement that will be filed with the Court. For the Court's approval."

Based upon that representation in the record, no hearing on the objections was held.

When the agreement was reduced to writing some time later, the Olsons, appellants herein, refused to sign it. An order was issued to the Olsons by the special master on March 23, 1981, requiring that they appear and show cause why the written agreement should not be accepted by the special master, even though not signed by the Olsons. An evidentiary hearing was subsequently held before the special master to determine the binding effect of the oral compromise. On June 16, 1981, the special master entered a decision adopting the stipulation as the agreement of the parties. The Olsons filed an objection to the report of the special master.

Argument before the district court was held to determine if the district court should adopt the decision of the special master. The court sustained the findings of the special master and issued a decree settling water rights in accordance with the written stipulation. The Olsons then filed this notice of appeal.

We conclude that this case must be reversed and remanded to the district court because the action of the special master in determining a question outside the scope of the order of reference was an action in excess of his jurisdiction, and thus his report on that question should not have been accepted by the district court. Because this case must be reversed and remanded, we also address the question of whether an oral agreement to compromise water rights falls

1. The other parties, the Yateses, were allowed to remove their signatures because they had sold their interest to the Tonsmeires. The Tonsmeires never signed the stipulation.

within the statute of frauds because it is a question of law necessary to the final determination of this case. I.C. § 1–205; *Idaho State University v. Mitchell,* 97 Idaho 724, 552 P.2d 776 (1976); *Lewiston Lime Co. v. Barney,* 87 Idaho 462, 394 P.2d 323 (1964); *Ore-Ida Potato Products, Inc. v. United Pacific Ins. Co.,* 87 Idaho 185, 392 P.2d 191 (1964).

## I

■ I.R.C.P. 53 allows a trial court to appoint a special master to hear portions of a particular case. The case is assigned to a special master pursuant to an order of reference. I.R.C.P. 53(c). The order of reference can be broad, or limited, and usually specifies exactly what issues are submitted to the master. I.R.C.P. 53(c) [2] reads in part:

"RULE 53(c). POWERS OF MASTER. —The order of reference to the master may specify or limit his powers and may direct him to report only upon particular issues or to do or perform particular acts or to receive and report evidence only . . . . Subject to the specifications and limitations stated in the order, the master has and shall exercise the power to regulate all proceedings in every hearing before him . . . ."

Thus, the power of the master is determined by his order of reference, and he possesses no power to hear controversies or perform acts outside the scope of the order. *See Idaho Placer Mining Co. v. Green,* 14 Idaho 294, 94 P. 161 (1908).

The order of reference in this case reads as follows:

"[T]he Honorable Milton A. Slavin, Magistrate of the above-entitled Court, be, and hereby is, appointed Special Master to hear said specific objections filed by the objectors listed below; and is fully empowered to make Findings of Fact and Conclusions of Law and do everything necessary to proceed to hear such objections . . . ."

Thus, the special master in this case was empowered to hear the objections to the department's proposed findings of water rights and to make findings of fact and conclusions of law on those objections. The master was not empowered to resolve a contract dispute between the parties. However, that, in effect, is what he did.

■ A stipulation is a contract. *Wilson v. Bogert,* 81 Idaho 535, 347 P.2d 341 (1959). The enforceability of an oral stipulation is determined by contract principles. The applicability of the statute of frauds to an oral stipulation is a contract question. The order of reference to the special master did not authorize him to decide those issues. While the district court examined the findings of the special master and ruled that the "finding will not be overturned by this Court," [3] the special master was acting in excess of his authority, and the district court erred in accepting the special master's report. The enforceability of the stipulation was an issue which should have been tried by the district court, not the master.

## II

■ On the issue of enforceability of a stipulation to settle litigation, under some circumstances, an oral stipulation will be enforced. *See* Restatement (Second) Contracts § 94 (1981). However, since it is a contract, it must comply with the requirements normally required of other contracts. Thus, when the subject matter of the stipulation falls within the proscription of the statute of frauds, and the agreement is oral and executory, it is unenforceable. A stipulation whose subject matter is within the statute of frauds must be in writing and signed by the parties to be charged. *Jackson v. Shain,* 619 S.W.2d 860 (Mo.1981); *DeWitt v. Lutes,* 581 S.W.2d 941 (Mo.1979).

Under Idaho law, real property must be transferred by a written instrument. I.C.

---

2. Federal Rule of Civil Procedure 53(c) is identical to the Idaho rule.

3. The district court was examining the findings of the special master in accordance with Rule 53(e)(2), which indicates that once a special master determines the issues submitted to him, a district court must accept those determinations unless they are clearly erroneous.

§ 9–503;[4] I.C. § 9–505.[5] In Idaho, water rights are real property. I.C. § 55–101. Thus, if the oral stipulation entered into in this case was an executory contract establishing and declaring water rights, it is a contract falling within the statute of frauds and is unenforceable in the absence of a writing. *See Sims v. Purcell,* 74 Idaho 109, 257 P.2d 242 (1953) (oral compromise agreements within the statute of frauds unless taken out by part performance); *Francis v. Green,* 7 Idaho 668, 65 P. 362 (1901) (oral settlement contract to convey water rights within statute of frauds unless taken out by part performance).

The record indicates that the compromise worked out between the parties in this case did change existing water rights. Priority dates were reshuffled among the water users, and, in some cases, the amounts of use were changed.

A water right is defined, not in terms of metes and bounds as in other real property, but in terms of the priority, amount, season of use, purpose of use, point of diversion, and place of use. *See* I.C. § 42–1410. A compromise to change or exchange any of these definitional factors would be identical to a compromise to change or exchange a portion of the metes and bounds description of real property. Viewed as such, the oral agreement entered into between the parties in the present case falls directly within the statute of frauds and, if still executory, would be unenforceable. It is not entirely clear from the record whether the oral agreement was still executory, or whether there had been sufficient part performance to take it out of the statute of frauds.[6]

Accordingly, we reverse and remand to the district court with directions to determine whether there was any part performance of the oral stipulation sufficient to take the agreement out of the statute of frauds. If not, the court or the master should proceed to hear the objections to the proposed findings of the Department of Water Resources.

DONALDSON, C.J., and BISTLINE and HUNTLEY, JJ., concur.

SHEPARD, J., dissents without opinion.

---

**4.** I.C. § 9–503 reads as follows:

"9–503. TRANSFERS OF REAL PROPERTY TO BE IN WRITING.—No estate or interest in real property . . . can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing."

**5.** I.C. § 9–505 reads in part as follows:

"9–505. CERTAIN AGREEMENTS TO BE IN WRITING.—In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent. . . .

. . . .

"5. An agreement for the . . . sale, of real property, or of an interest therein, and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged."

**6.** The district court relied on a line of Idaho cases generally referred to as the "agreed boundary" cases. Although the legal rationale for these cases is not always stated in them, or may be stated in different terms (as: not a "conveyance of land," thus not within the statute of frauds, *see Downing v. Boehringer,* 82 Idaho 52, 349 P.2d 306 (1960)), they are most likely a branch of the part performance exception to the statute of frauds. Corbin, Contracts, § 412. *See also* Restatement (Second) Contracts, § 128 and comment. The agreed boundary cases involve a boundary line between two adjoining tracts which is disputed, and the landowners settle the dispute by marking the agreed upon boundary and taking possession of the land up to that line. This resembles part performance, alleviating the need to invoke the statute. As noted above, the rationale underlying these cases, that of part performance of the oral contract between the parties, could possibly exist in this case, but must be proven in an evidentiary hearing conducted before the district court.